IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RACHELLE LANETT ANDERSON, | * | |
| Petitioner, | * | |
| v. | * | Civil No. L-04-3578 |
| | * | Crim. No. L-00-033 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

*************

**MEMORANDUM**

Pending is Petitioner Rachelle Lanett Anderson's *pro se* motion to vacate her sentence pursuant to 28 U.S.C. § 2255. On August 17, 2001, the Court sentenced Anderson to 120 months imprisonment following her jury conviction for multiple narcotics violations.[1] Anderson contends that this sentence should be vacated because her trial attorney provided ineffective assistance during Anderson's appeal of her conviction and sentence. Specifically, Anderson asserts that her appellate counsel was ineffective for failing to argue that the trial court should have stricken a juror reported to have overheard another juror's inappropriate comment.

Because the papers adequately present the issues, no hearing is necessary. See United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that

---

[1] The Court imposed the 120 month sentence for Anderson's conviction for conspiracy to aid and abet the distribution of and possession with intent to distribute heroin, crack cocaine and powder cocaine. Anderson was also sentenced to 24 months imprisonment for conspiracy to sell drug paraphernalia, to run concurrently.

C/M CHAMBERS  11-2-07

petitioner is entitled to no relief"). For the reasons set forth below, the Court will, by separate order, deny Anderson's motion and direct the Clerk to close the case.

I.      **BACKGROUND**

On January 27, 2000, a federal grand jury indicted Anderson and thirteen co-defendants for conspiracy to sell drug paraphernalia in violation of 21 U.S.C. § 863(a) and conspiracy to aid and abet the distribution of controlled substances in violation of 21 U.S.C. §§ 8846 and 841(a)(1). Anderson and four of her co-defendants were tried over the course of twenty-eight days in the fall of 2000. During the trial, the government presented extensive evidence demonstrating that, from 1993 to 2000, the defendants operated multiple stores in Baltimore retailing chemicals and equipment used by customers to process and package illegal drugs for sale.

The jury was comprised of twelve jurors and six alternates. Approximately one month into the trial, Alternate Juror Number One reported to the court clerk that Juror Number One had made certain comments regarding her son's drug experimentation and had said something like, "fry them" in reference to a witnesses' testimony about his own potential twenty-years-to-life imprisonment sentence. In response, the Court conducted voir dire of Juror Number One and of Alternate Juror Number One. Although these individuals gave conflicting reports regarding the context in which these comments were made, the Court ultimately determined that the voir dire testimony of Alternate Juror Number One justified striking Juror Number One.[2]

_____

[2] Because the Court determined that Juror Number One's reference to her son's drug use was harmless, the voir dire of both jurors focused on the reported "fry them" comment. According to Juror Number One, she made the statement while discussing with other jurors what types of comments could get a person out of jury service. Alternate Juror Number One, however, testified that the remark was made after the testimony a witness

2

During voir dire, Alternate Juror Number One reported that, in response to the "fry them" comment, Juror Number Twelve stated, "I agree." Defense counsel argued that this testimony warranted removing Juror Number Twelve from the jury as well. After hearing extensive argument from both sides, the Court disagreed.[3] Accordingly, Juror Number Twelve remained on the jury over defense counsels' objection, and the jury was reseated with Alternate Juror Number One taking the place of the stricken Juror Number One.

On December 12, 2000, the jury convicted Anderson and her co-defendants for both conspiracy to sell drug paraphernalia and conspiracy to aid and abet the distribution of illegal drugs. Following her sentencing, Anderson appealed her conviction to the United States Court of Appeals for the Fourth Circuit. The brief submitted by defense counsel on appeal raised numerous issues that, it was argued, justified reversal of Andereson's conviction and sentence, but did not mention the trial court's refusal to strike Juror Number Twelve. On June 13, 2003, the Fourth Circuit affirmed Anderson's conviction and sentence. See United States v. Marshall, 332 F.3d 254 (4th Cir. 2003). The Supreme Court denied certiorari on November 17, 2003.

Anderson filed her § 2255 motion to vacate her sentence on November 8, 2004. In addition to the juror misconduct claim currently at issue, Anderson's § 2255 motion to

---

who had pled guilty and was facing a twenty-years-to-life sentence. Alternate Juror Number One's understanding of the comment was that "her mind's made up. I mean as, I mean, the way I interpret it as, it doesn't really matter. She's just, they should just be given the sentence." Alternate Juror Number One also understood the "fry them" remark to apply to "any of the people who were involved in the drug industry."

[3] The Court found that "Juror Number 12 took an oath that she could be fair . . . . There was nothing that she said . . . which would indicate that she would be anything other than fair. At most, she made an offhand comment. And I am not going to strike her on that basis."

3

vacate her sentence included claims that her legal representation and conviction were flawed in myriad other respects. On January 4, 2007, the Court denied all but one of Anderson's claims, leaving only the juror misconduct claim for future resolution. The Court directed the government to provide further briefing on whether Anderson's counsel was ineffective in failing to raise the Court's refusal to strike Juror Number Twelve. After the government did so, Anderson requested and was granted an opportunity to respond.

II.   ANALYSIS

A careful review of the record and of the applicable law demonstrates that Anderson's claim of ineffective assistance must fail. Under the well-established Strickland standard, a petitioner bears the burden of demonstrating that (1) she received ineffective assistance of counsel; and (2) she was prejudiced by that ineffective assistance. Strickland v. Washington, 466 U.S. 668, 688 (1984).

In order to establish that her counsel provided ineffective assistance, Anderson must show that her attorneys' conduct fell below the reasonable standard of conduct expected of attorneys. Id. Anderson also must show that, but for her counsels' errors, she would have obtained a more favorable result. United States v. DeTemple, 162 F.3d 279, 289 (4th Cir. 1998); see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (holding that habeas applicant must demonstrate that "counsel was objectively unreasonable" in failing to file a merits brief addressing a nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal"). The relevant facts of this case do not support such conclusions.

4

A. <u>Anderson's Attorney Was Reasonable in Declining to Raise the Juror Misconduct Issue on Appeal</u>

Anderson argues, in essence, that her attorneys provided ineffective assistance by declining to brief the argument that Anderson's conviction and sentence should be overturned due to the Court's refusal to strike Juror Number Twelve. Anderson's claim ignores the reality that her attorneys faced the not uncommon task of whittling down a body of potential appellate arguments into a brief presenting the strongest arguments possible. As courts have consistently held, petitioners seeking to prevail on a § 2255 claim based on appellate counsel's failure to assert all possible arguments must overcome a presumption that counsel provided effective assistance in deciding which issues were most likely to prevail on appeal. See <u>Robbins</u>, 528 U.S. at 288 (noting the "presumption of effective assistance of counsel"); <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir.1993) (same).

This presumption is especially appropriate in this case. As Anderson's lead attorney explained in an affidavit, "the preparation of the [appellate] brief required a type of triage process in which the strongest arguments were allocated space based on their strength and complexity." Notwithstanding Anderson's contention that the omission of the issue of potential juror misconduct or bias constitutes ineffective assistance, Anderson's counsel stated his belief that, even in retrospect, "this argument did not rise to the level of inclusion in the brief."

In this case, Anderson's attorneys' decision to devote their appellate brief to the issues presenting the highest likelihood of success was far from "objectively unreasonable." <u>Strickland</u>, 466 U.S. at 694. On the contrary, it may have been the best course of action. See <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) ("Winnowing out

5

weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy.") (internal quotations omitted). "Counsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Jones v. Barnes, 463 U.S. 745, 752, (1983)).

Because there is no suggestion in the record that Anderson's counsels' decision to omit reference to potential juror misconduct or bias was "objectively unreasonable," her ineffective assistance of counsel claim fails.

> B. Even Assuming That Anderson's Attorney Erred, Anderson's Juror Misconduct Claim Would Not Have Prevailed on Appeal

Assuming, *arguendo*, that the Court concluded that Anderson's attorneys decision fell below the reasonable standard of conduct expected of attorneys, Anderson would nonetheless be unable to show that she was prejudiced by her attorneys' decision. The inclusion in her appellate brief of the claim of juror misconduct or bias would not have affected the Fourth Circuit's disposition of Anderson's appeal because the Court's decision not to strike Juror Number Twelve was not error.

Appellate courts review trial courts' decisions on exclusion of jury members for abuse of discretion. United States v. Fulks, 454 F.3d 410, 427 (4th Cir. 2006); see also id. at 429 (noting that "appellate courts provide the district courts substantial latitude on the qualification of trial jurors"). Trial judges "must reach conclusions as to [a prospective juror's] impartiality and credibility by relying on their own evaluations of

6

demeanor evidence and of responses to questions." Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981).

The record demonstrates that the Court did not abuse its discretion in refusing to strike Juror Number Twelve. The Court conducted extensive voir dire of the juror who reported that Juror Number Twelve's response to the remark, "fry them," was "I agree." In declining to strike Juror Number Twelve, the Court noted that the exchange at issue was in the context of an individual who had admitted to involvement in drug activity and that there was no indication that she was biased toward the defendants. This judgment was well within the Court's discretion. See Strawbridge v. Sugar Mountain Resort, Inc., 152 Fed. Appx. 286, 291 (4th Cir. 2005) ("A trial court has broad discretion to determine whether to order a hearing on a claim of juror bias.").[4]

Because the Court did not abuse its discretion in refusing to strike Juror Number Twelve, the inclusion of this issue in Anderson's appellate brief would not have affected the outcome of her appeal. Accordingly, her ineffective assistance of counsel claim fails.

### III.   CONCLUSION

For the foregoing reasons, the Court will, by separate order, deny Anderson's § 2255 motion to vacate her sentence.

Dated this 25TH day of October, 2007.

Benson Everett Legg
Chief Judge

---

[4] Based on the facts presented during voir dire, the court was also not required to conduct additional voir dire in an attempt to ferret out a remotely possible bias. See United States v. Brooks, 957 F.2d 1138, 1144 (4th Cir. 1992) (noting that trial court's refusal to ask requested voir dire questions is reviewed for abuse of discretion and holding that trial court did not abuse discretion where there was no "reasonable possibility" of bias).

7